No. 19-6394

IN THE

## UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DECARLOS TITINGTON

*Defendant-Appellant.*

**On Appeal from the United States District Court
for the Middle District of Tennessee**

District Court Case No. 3:17-cr-124-7
Honorable Waverly D. Crenshaw, Jr., Chief United States District Judge

BRIEF OF DEFENDANT-APPELLANT

KENNETH P. TABLEMAN

KENNETH P. TABLEMAN, P.C.
Attorney for Appellant
71 Maryland Avenue, S.E.
Grand Rapids, Michigan 49506-1819
(616) 233-0455

*ORAL ARGUMENT  REQUESTED*

TABLE OF CONTENTS

Page No.

TABLE OF CASES, STATUTES, AND OTHER AUTHORITIES. . . . . . . . . . .  iv

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.. . 1

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

I.      Possession of 7.66 Grams of Cocaine in a Bag and
        Possession of a Gun in a Car is Not Sufficient Evidence
        to Support Titington's Conviction for Possession With
        Intent to Distribute Cocaine and Possession of a Firearm
        in Furtherance of a Drug Trafficking Crime. (Counts
        Forty and Forty-Two).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II.     There Was Not Sufficient Evidence to Support
        Titington's Conviction for Conspiracy to Distribute Five
        Kilograms or More of Cocaine and 280 Grams or More
        of Crack Cocaine (Count Two).. . . . . . . . . . . . . . . . . . . . . . . . 20

Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

III.    The District Court Plainly Erred When it Told the Jury That it Did Not Have to Find that Titington Knew What Quantity of Drugs the Crime Involved. (Count Two). . . . . . . . . . . 24

Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IV.    The District Court Should Have Adjusted Titington's Sentence to Account for 52 Months Titington Served on State Sentences That Were Relevant Conduct to the Instant Offense. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

ADDENDUM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

## TABLE OF CASES, STATUTES, AND OTHER AUTHORITIES

**Cases**

*Alleyne v. United States*, 570 U.S. 99 (2013). . . . . . . . . . . . . . . . 21, 25, 26, 27, 28

*Apprendi v. New Jersey*, 530 U.S. 466 (2000). . . . . . . . . . . . . . . . 21, 25, 27, 28

*Burrage v. United States*, 134 S.Ct. 881 (2014). . . . . . . . . . . . . . . . . . . . 26, 28, 30

*Chapman v. United States*, 500 U.S. 453 (1991). . . . . . . . . . . . . . . . . . . . . . . 36

*Flores-Figueroa v. United States*, 556 U.S. 646 (2009). . . . . . . . . . . . . . . . . 27, 29

*Manners v. United States*. 947 F.3d 377 (6th Cir. 2020). . . . . . . . . . . . . . . . . . 30

*Morissette v. United States,* 342 U.S. 246 (1952). . . . . . . . . . . . . . . . . . . . . . . . 30

*People v. Allen*, 429 Mich 558, 420 N.W.2d 499 (Mich 1988). . . . . . . . . . . . . . 17

*Rehaif v. United States*, 139 S.Ct. 2191 (2019). . . . . . . . . . . . . . . . . . . 28, 29, 30

*Salmi v. Sec'y of Health and Human Services*, 774 F.2d 685 (6th Cir. 1985). 30, 37

*Staples v. United States*, 511 U.S. 600 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Talley v. United States*, 573 Fed. App'x 410 (6th Cir. 2014). . . . . . . . . . . . . . . . 18

*Turner v. United States*, 396 U.S. 398 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Bostic*, 480 F.2d 965 (6th Cir. 1973). . . . . . . . . . . . . . . . . . . . . 22

*United States v. Castellanos*, 731 F.2d 979 (D.C. Cir. 1984). . . . . . . . . . . . . . . . 18

*United States v. Caver,* 470 F.3d 220 (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . . 21

*United States v. Collazo, et al.,* Case Nos. 15-50509, 16-50048, 16-50117, 16-50195 and 16-50345, 2020 U.S. App. LEXIS 2870 (9th Cir. July 29, 2020). . . . 28

*United States v. Cox*, 593 F.2d 46 (6th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Crawford*, 943 F.3d 297 (6th Cir. 2019). . . . . . . . . . . . . . . . . . . 31

*United States v. Davis*, 383 Fed. App'x 269 (4th Cir. 2010). . . . . . . . . . . . . . . 18

*United States v. Dado*, 759 F.3d 550 (6th Cir. 2014). . . . . . . . . . . . . . 26, 27, 28, 30

*United States. v. Dunham*, 295 F.3d 605 (6th Cir. 2002). . . . . . . . . . . 31, 35, 36, 37

*United States v. Gjurashaj*, 706 F.2d 395 (2d Cir. 1983). . . . . . . . . . . . . . . . . . . 15

*United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014). . . . . . . . . . . . . . . . . . . . . 17

*United States v. Gonzalez-Murillo*, 852 F.3d 1329 (11th Cir. 2017). . . . . . . . . 36, 37

*United States v. Hammoude*, 51 F.3d 288 ( D.C. Cir. 1995). . . . . . . . . . . . . . . . 15

*United States v. Harris*, 182 F.3d 580 (6th Cir. 1999). . . . . . . . . . . . . . . . . . . . . 20

*United States v. Hill*, 187 F. Supp 3d. 959 (N.D. Ill. 2016). . . . . . . . . . . . . . . 36, 37

*United States v. Jefferson*, 791 F.3d 1018 (9th Cir. 2015). . . . . . . . . . . . . . . . . . 28

*United States v. Latham*, 874 F.2d 852 (1st Cir. 1989). . . . . . . . . . . . . . . . . . . . 19

*United States v. Mackey*, 265 F.3d 457 (6th Cir. 2001). . . . . . . . . . . . . . 14, 17, 18

*United States v. Mandoka*, 869 F.3d 448 (6th Cir. 2017). . . . . . . . . . . . . . . . . . . 31

*United States v. Marston*, 694 F.3d 131 (1st Cir. 2012). . . . . . . . . . . . . . . . . . . . 15

*United States v. Monger*, 185 F.3d 574 (6th Cir. 1999). . . . . . . . . . . . . . . . . . . . 19

*United States v. Morrison*, 220 F. App'x 389 (6th Cir. 2007). . . . . . . . . . . . . . . 23

*United States v. Nichols,* 184 F. App'x 532 (6th Cir. 2006). . . . . . . . . . . . . . . . . 19

v

*United States v. Noel*, 372 Fed. App'x 586 (6th Cir. 2010). . . . . . . . . . . . . . . 31, 35

*United States v. Olano*, 507 U.S. 725 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Pizarro*, 772 F.3d 284 (1st Cir. 2014). . . . . . . . . . . . . . . . . . 26

*United States v. Potter*, 927 F.3d 446 (6th Cir. 2019). . . . . . . . . . . . . . . . . . . 21

*United States v. Powell*, 847 F.3d 760 (6th Cir. 2017). . . . . . . . . . . . . . . . . . . 22

*United States v. Prince*, 214 F.3d 740 (6th Cir. 2000). . . . . . . . . . . . . . . . . . . 24

*United States v. Santillana*, 540 F.3d 428 (6th Cir. 2008). . . . . . . . . . . . . . . . 31

*United States v. Shabani*, 513 U.S. 10 (1994). . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Skipper*, 74 F.3d 608 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . 19

*United States v. Vonner*, 516 F.3d 382 (6th Cir. 2008). . . . . . . . . . . . . . . . . . 31

*United States v. Webb*, 359 F.2d 558 (6th Cir. 1966). . . . . . . . . . . . . . . . . . . . 21

*United States v. White*, 617 F. App'x 545 (6th Cir. 2015). . . . . . . . . . . . . . . 13, 36

**<u>Statutes</u>**

18 U.S.C. § 922(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

18 U.S.C. § 924(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3584. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

21 U.S.C. § 841(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 26, 27

21 U.S.C. § 841(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

21 U.S.C. § 841(b)(1)(A)(ii) and (iii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

21 U.S.C. § 846. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

USSG § 5G1.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33, 34, 35, 36

USSG § 5K2.23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

**Other**
4 W. Blackstone, Commentaries on the Laws of England (1769). . . . . . . . . . . . . 30

Fed. R. App. P. 32(a)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Fed. R. App. P. 32(a)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Fed. R. App. P. 32(a)(7)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Fed. R. App. P. 32(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Fed. R. Crim. P. 29. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Fed. R. Crim. P. 52(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

6th Cir. Pattern Jury Instr. - Crim. 3.03(3) (2019). . . . . . . . . . . . . . . . . . . . . . . 22

6th Cir. Pattern Jury Instr. - Crim. 14.05(3)(B)(4) (2019). . . . . . . . . . . . . . . . . . 22

## STATEMENT REGARDING ORAL ARGUMENT

DeCarlos Titington asks for oral argument. Oral argument will help the Court better understand the facts, permit counsel to answer questions, and help the Court justly decide the appeal.

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is a direct appeal from a final judgment of the district court in a criminal case. The district court had jurisdiction over the case because it concerned alleged violations of laws of the United States. 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. §1291.

The judgment was filed on November 27, 2019. (Judgment, R. 1594, Page ID # 14331–39).  Titington filed a notice of appeal on December 10, 2019, within the 14 days allowed under Federal Rule of Appellate Procedure 4. (Notice of Appeal, R.1604, Page ID # 14390).

## STATEMENT OF THE ISSUES

I.      Is Possession of 7.66 Grams of Cocaine in a Bag and Possession of a Gun in a Car Sufficient to Support a Conviction for Possession With Intent to Distribute Cocaine and Possession of a Firearm in Furtherance of a Drug Trafficking Crime? (Counts Forty and Forty-Two).

II.     Without Proof that Titington was Involved with Five Kilograms or More of Cocaine and 280 Grams or More of Crack Cocaine Was There Sufficient Evidence to Support Titington's Conviction for Conspiracy to Distribute Five Kilograms or More of Cocaine and 280 Grams or More of Crack Cocaine? (Count Two).

III.    Did the District Court Plainly Err When it Told the Jury That it Did Not Have to Find That Titington Knew What Quantity of Drugs the Crime Involved? (Count Two).

IV.     Did the District Court Recognize That it had Discretion to Adjust Titington's Sentence for 52 Months Served on Discharged Sentences, and Does the Unequal Treatment of Discharged and Undischarged Sentences Violate the Constitution?

## INTRODUCTION

This is a direct appeal following a lengthy multi-defendant trial of racketeering and other charges in the Middle District of Tennessee.

Titington was one of five defendants tried.

In this appeal he contests the sufficiency of the evidence supporting the jury's verdict finding him guilty of possession with intent to distribute cocaine on February 15, 2015, guilty of possessing a firearm in furtherance of that crime, and guilty of conspiracy to possess with intent to distribute five kilograms or more of cocaine and 280 grams or more of crack cocaine,

In the alternative, he also seeks a new trial on his drug conspiracy conviction because the trial court's instructions allowed the jury to find him guilty without finding that he knew the quantity of drugs involved.

Finally, Titington challenges the district court's failure to adjust his 270-month sentence to account for discharged state sentences arising from conduct that was relevant to some of his convictions.

STATEMENT OF THE CASE

After exchanging gunfire with two men outside a Mini-Mart store in Clarksville, Tennessee on December 23, 2014, DeCarlos Titington was convicted in state court of aggravated assault and felon in possession of a firearm. He was sentenced to serve six years and four years in prison on the convictions. But that was not enough time for the federal government. It charged Titington with a racketeering conspiracy running from 2005 through 2017 involving the Gangster Disciples gang in Clarksville and with other crimes.[1] (Third Superceding Indictment, R. 831 Page ID # 5958–5965, Sentencing Tr., R. 1675, Page ID # 21260).

A jury convicted Titington of the racketeering conspiracy, of conspiracy to distribute five kilograms or more of cocaine and 280 grams or more of cocaine base, of two counts of possessing a firearm after a felony conviction, of possessing an unspecified amount of cocaine with intent to distribute on February 15, 2015, and of possessing a firearm in furtherance of a drug trafficking crime on February 15, 2015. He was acquitted of five charges arising from the incident at the Mini-

_____

[1]

 Clarksville is a town of about 156,000 people located some 50 miles northwest of Nashville near the Kentucky border. Https://www.en.wikipedia.org/wiki//Clarksville_tennessee, retrieved April 5, 2020.

Mart. (Jury Verdict, R. 1368, Page ID #10441–46).[2]

Count One of the indictment charged the racketeering conspiracy and alleged many overt acts in conducting the affairs of the racketeering enterprise, including distributing drugs and murders. (Third Superceding Indictment, R. 831, Page ID # 5965–78).

Count Two alleged that Titington and others conspired to distribute five kilograms or more of cocaine, 280 grams or more of crack cocaine, and other drugs. (*Id*., Page ID # 5978–79).

Counts Thirty-Four through Thirty-Nine all related to the Mini-Mart incident. They charged Titington with possessing a firearm after a felony conviction, two counts of attempted murder in aid of racketeering, two counts of assault in aid of racketeering, and use of a firearm in furtherance of a crime of violence. Counts Forty through Forty-Two alleged that on February 15, 2015, Titington possessed with intent to distribute cocaine, possessed a firearm after a felony conviction, and possessed a firearm in furtherance of a drug trafficking crime. (*Id*., Page ID # 5997–6002).

---

[2] In all, the jury acquitted Titington of Counts Thirty-Five through Thirty-Nine but convicted him of Counts One, Two, Thirty-Four, and Forty through Forty-Two. (Jury Verdict, R. 1368, Page ID # 10441–46).

The government also filed an information stating that Titington was previously convicted of a felony drug offense — possession of more than one-half ounce of marijuana for resale. (Information, R. 878, Page ID # 6328–30).

Titington was tried with Marcus Darden, Maurice Burks, Derrick Kilgore, and Elance Lucas.[3]

The government's proofs at trial described how the Clarksville gang was a local part of a national group. (Trial Tr., Vol. 5, R. 1645, Page ID # 15730–31, Vol. 22, R 1662, Page ID # 20184–85, 20213).

Gangster Disciples members look out for each other. They help each other in illegal activities. (Trial Tr., Vol. 11, R. 1651, Page ID # 17285, Vol.. 22, R. 1662, Page ID # 20238). They keep other gangs from selling drugs in Gangster Disciples' territory. (Trial Tr., Vol. 6, R. 1646, Page ID # 15846–47). One such territory is the Lincoln Homes public housing complex in Clarksville.(*Id*., Page ID # 15846). The gang enforces its rules by "smashing" (beating) errant members. (Trial Tr., Vol. 7, R. 1647, Page ID # 16103–04, Vol. 22, R. 1662, Page ID # 20206–08). Members pay dues to the gang. (Trial Tr., Vol. 5, R. 1645, Page ID #

---

[3]Of the other co-defendants Lorenzo Brown, Xavier Jenkins, Rex Whitlock, and James Luke pled guilty, the district court severed the trial of Bradley Herdison because he faced the death penalty, and Lamar Warfield was a fugitive. (Mem. Opinion, R. 1460, Page ID # 11766).

15632–52, 15684, 15695, 15702) (identifying lists of gang members and dues payments, including payments from Titington).

Members of the Gangster Disciples wear blue and black, use signs like a six-pointed star or a three-tined pitch fork, and use the number 74 symbolizing the letters in the alphabet for "G" and "D."  (Trial Tr., Vol. 11, R. 1651, Page ID # 17267–69, See Mem. Opinion, R. 1460, Page ID # 11784–89).

Members use nicknames proceeded by "Mac". They share literature setting forth gang beliefs and rules.  They use special handshakes.  (Trial Tr., Vol. 5, R. 1645, Page ID # 15718 (creed) Page ID # 15722–29) (rules) Page ID #15580–81) (use of nicknames and handshakes)

Some members committed assaults and murders to enhance their standing in the gang.  (Trial Tr., Vol. 7, R. 1647, Page ID # 16181 (Whitlock's shooting of Lil Will; 16194–95, Darden's shooting of Hot Dog).

Several witnesses said Titington was a member of the Gangster Disciples in Clarksville.  (Trial Tr., Vol. 3, R. 1643, Page ID # 14932–33. Trial Tr. Vol. 14, R 1654, Page ID # 18179).

Danyon Dowlen, a former leader of the Tennessee region of the Gangster Disciples, identified Titington in photographs with co-defendants Burks and Darden.  The photographs showed the men flashing gang symbols.  (Trial Tr.,

7

Vol. 11, R. 1651, Page ID # 17244–46, 17194–95, 17267–69).  According to

Dowlen, Titington served as a block coordinator and enforcer for the Gangster

Disciples at Lincoln Homes.  (*Id*., Page ID # 17244–46).

Gang members, including Titington, bought and sold drugs. (Trial Tr., Vol.

7, R. 1647, Page ID # 16116, Vol. 11, R. 1651, Page ID # 17188–90, 17241,

17247–49, Vol. 14, R. 1654, Page ID # 18179.

Among the evidence directed at Titington was an incident captured on

video-tape at a Mini-Mart in Clarksville on December 23, 2014. (Trial Tr., Vol.

22, R. 1662, Page ID # 20066–78) (Sgt. Michael Newman).  The video showed

two men attacking Titington inside the store. When a gun fell out of Titington's

clothing the men ran out of the store. They got in a car and while driving away

fired gunshots at Titington, who returned fire. (*Id.*, Page ID # 20071–77).[4]

There was also testimony about Titington's encounter with police on

February 15, 2015, that led to the charges in Counts Forty, Forty-One, and Forty-

Two. Clarksville officers responded to a car-tree accident.  Sergeant Skinner

found Titington unconscious in the driver's seat of the car.  The car was running,

so Skinner opened the passenger side door and put the transmission in park.  He

---

[4]Titington argued that the evidence showed that he acted in self defense. (Trial Tr., Vol. 25, R. 1665, Page ID # 20780–83).

saw a baggy containing white powder in the passenger seat. (Trial Tr., Vol. 4, R. 1644, Page ID # 15462–66).  It turned out to contain 7.66 grams of cocaine. (Trial Tr., Vol. 5, R. 1645, Page ID # 15501; Trial Tr., Vol. 7, R. 1647, Page ID # 16335).

Officer Lanham was on the other side of the car.  When he tried to wake Titington he saw a Glock 19 nine mm handgun in the car. (Trial Tr., Vol. 4, R. 1644, Page ID # 15465–67).  Skinner thought Titington may have overdosed, EMS arrived and attended to Titington.  (*Id.*, Page ID # 15468, 15473–74).

Skinner also called another officer, Lockerman, who came to the scene. (*Id.*, Page ID # 15469–70).  Titington, by now awake, was arrested on an outstanding probation violation warrant.  (*Id.*, Page ID # 15471). Lanham took Titington's personal possessions and turned them over to Lockerman. They included a Huawei Tracfone.  (Trial Tr., Vol. 5, R. 1645, Page ID # 15497, 15502–03).

Lockerman got a search warrant for the phone.  (*Id.*, Page ID # 15505). The phone contained three text messages from December 2014 that related to drug trafficking.[5] (*Id.*, Page ID # 15550, 15555–56).

---

[5]The district court denied Titington's pretrial motion to suppress this evidence. (Mem. Opinion and Order, R. 859, Page ID # 6185–94).

There were many other witnesses who testified about activities of the other defendants. The trial extended over 32 days.

At the end of the government's case and again after the jury's verdict Titington moved for judgments of acquittal. The district court the motions. (Trial Tr., Vol 23, R. 1663, Page ID # 20271 (motion), 20301 (ruling), Defendant's Motion for Judgment of Acquittal, R. 1388, Page ID #10587, Mem. Opinion, R. 1460, Page ID # 11777–78).

At sentencing, among other objections, Titington asked the district court to adjust his sentence for 52 months he had finished serving on state convictions arising from the Mini-Mart incident. (Defendant's Sentencing Mem., R. 1547, Page ID # 13685). The district court denied the request. (Sentencing Tr., R. 1675, Page ID # 21278–79). The district court sentenced Titington to serve a total of 270 months in prison.  The sentence was at the top end of the sentencing guideline range as calculated by the district court. (*Id.*, Page ID # 21246–47, 21279).

Further reference to the record appears in the argument part of this brief.

<u>SUMMARY OF THE ARGUMENT</u>

Titington has four arguments.

First, evidence that he was found unconscious in a car with 7.66 grams of

cocaine in a bag and that there was a gun in the car was not sufficient to support the jury's verdict that he was guilty of possessing cocaine with intent to distribute and possessing a firearm in furtherance of a drug trafficking crime.

Second, without evidence that tied Titington to large amounts of drugs there was not enough evidence to support the jury's verdict that Titington joined a conspiracy to sell five kilograms or more of cocaine or 280 grams or more of crack cocaine.

Third, the district court plainly erred when it failed to tell the jury that it had to find that Titington knew what amount of drugs he agreed to possess in order to find him guilty of conspiracy to possess five kilograms or more of cocaine and 280 grams or more of crack cocaine.

Fourth, the district court should have adjusted Titington's 270-month sentence for the 52 months that he had completed serving in state custody for crimes that were relevant conduct to his federal crimes. The district court did not realize that it had discretion to do so.  In addition, requiring that the court adjust sentences for undischarged sentences but not for discharged sentences violates defendants' rights to due process of law.

The Court should vacate Titington's convictions for possessing cocaine with intent to distribute, possessing a firearm in furtherance of a drug trafficking

11

crime, and conspiracy to distribute drugs and enter judgments of acquittal. If the Court declines to acquit Titington of the drug conspiracy count, it should order a new trial on that count. Finally, the Court should remand the case for re-sentencing so the district court can adjust Titington' sentence for the 52 months he spent in state custody on related charges.

## ARGUMENT

I.    Possession of 7.66 Grams of Cocaine in a Bag and Possession of a Gun in a Car is Not Sufficient Evidence to Support Titington's Conviction for Possession With Intent to Distribute Cocaine and Possession of a Firearm in Furtherance of a Drug Trafficking Crime. (Counts Forty and Forty-Two).

A. Standard of Review.

In reviewing a claim of insufficient evidence, the Court reviews the evidence in the light most favorable to the prosecution and determines whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307–309 (1979). A defendant claiming insufficiency of the evidence bears a very heavy burden. *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

The Court's conducts *de novo* review when the defendant moved for judgment of acquittal at the close of the government's proofs. *United States v.*

*Williams*, 612 F.3d 417, 423 (6th Cir. 2010).

The Court must determine if there was evidence that a reasonable jury could rely upon. A verdict may rest on circumstantial evidence alone, so long as the evidence does not require too great a "leap of faith" in order to support a conviction. *United States v. White*, 932 F.2d 588, 590 (6th Cir. 1991).

The record must show that there was sufficient proof presented to convince the finder of fact with "utmost certainty." *In Re Winship*, 397 U.S. 358, 364 (1970). The evidence must permit the jury to reach "a subjective state of near certitude" about the guilt of the accused. *Jackson v. Virginia*, 443 U.S. at 315. So, it takes more than any evidence or a modicum of evidence to sustain the jury's guilty verdict. (*Id*., at 320). And, if, after viewing the evidence in the light most favorable to the prosecution, reasonable inferences from the evidence conflict, then the evidence is not sufficient to support the verdict. *Crosby v. Jones*, 682 F. 2d 1373, 1383 (11th Cir. 1982).

B.  Discussion.

It is unlawful for any person knowingly or intentionally to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance."  21 U.S.C. § 841(a)(1).

To convict a person for violating the statute the government must prove the

following elements: (1) knowing (2) possession of a controlled substance (3) with intent to distribute. *United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001).

Here, Titington moved the Court to enter a judgment of acquittal at the close of the government's proof and then renewed his request after his conviction by filing a motion for judgment of acquittal. (Trial Tr., Vol 23, R. 1663, Page ID # 20271 (motion), 20301 (ruling), Motion for Judgment of Acquittal, R. 1388, Page ID # 10587). The district court denied the motions. When it denied Titington's written motion for judgment of acquittal the district court said that the motion was insufficient because Titington simply asked the court to enter a judgment of acquittal and made no specific arguments referring to the evidence. The district court denied the motion without any analysis of the evidence against Titington. (Mem. Opinion, R. 1460, Page ID # 11777–78).

The district court erred. A motion brought under Fed. R. Crim. P. 29 need not specify the grounds for acquittal. An assertion that the evidence was insufficient to support the verdict is enought to raise the issue. *United States v. Cox*, 593 F.2d 46, 48 (6th Cir. 1979). This is so because Rule 29 does not contain any requirement that the defendant state specific grounds for the motion.[6]

---

[6]**Rule 29, Motion for a Judgment of Acquittal**
(a) Before Submission to the Jury. After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter

A broadly stated motion for acquittal is "sufficient to preserve the full range of challenges, whether stated or unstated, to the sufficiency of the evidence." *United States v. Hammoude*, 51 F.3d 288, 291 ( D.C. Cir. 1995), *United States v. Gjurashaj*, 706 F.2d 395, 399 (2d Cir. 1983)*, United States v. Marston*, 694 F.3d 131, 134 (1st Cir. 2012) (recognizing that Rule 29 permits general objections).

The district court should have analyzed the evidence in response to Titington's motions.

Turning to the merits of the argument, the jury here convicted Titington of Count Forty, possession with intent to distribute cocaine on February 15, 2015, and County Forty-Two, possession of a firearm in furtherance of a drug trafficking crime on February 15, 2015.  If the evidence was not sufficient to

---

a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.

.   .   .

(c) After Jury Verdict or Discharge.
(1) Time for a Motion.  A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later.

Fed. R. Crim. P. 29

15

support a conviction on Count Forty then the conviction on Count Forty-Two would fail because it derives from Count Forty.

The only element of the crime in dispute was Titington's intent to distribute. There is no bright-line rule about what quantity of drugs proves possession with intent to distribute. It depends on the surrounding circumstances and often calls for expert testimony.

The proofs at trial showed that on February 15, 2015, Titington was found unconscious in his car and in the car were 7.66 grams of cocaine and a Glock 19 nine mm handgun.  (Trial Tr., Vol. 4, R. 1644, Page ID # 15463–64, 15467–68). There was evidence that Titington sold drugs at other times, but none of this evidence related to February 15, 2015.  There was no testimony that Titington was selling drugs on February 15, 2015; no one said that he was coming or going from a drug trafficking transaction.  In addition, there was no testimony that 7.66 grams of cocaine is a distribution quantity, or that the cocaine was unusually pure. The evidence pointed toward personal use: there was no packaging or scales in the car and Officer Skinner thought that Titington may have overdosed. The officers called for an ambulance.  It took officers about five minutes to rouse Titington. (*Id*., Page ID # 15473–74).

Titington was charged in Counts Forty and Forty-Two with specific crimes

16

taking place on a specific day.  Proof that on other days he sold drugs was not enough to support the jury's verdict.  Criminal trials are about specific charges, not about the personal characteristics of the defendant. In our system of justice "we try cases, rather than persons" so it does not follow from a defendant's past acts that he committed the particular crime charged. *United States v. Gomez*, 763 F.3d 845, 861 (7th Cir. 2014) *quoting People v. Allen*, 429 Mich 558, 420 N.W.2d 499, 504 (Mich 1988)).

Without proof that 7.66 grams—about one-fourth of an ounce — is a distribution quantity there was not enough evidence to support the jury's verdict on Count Forty and without a conviction on Count Forty there was no drug trafficking crime to support the verdict on Count Forty-Two.

Other cases show what sufficient proof of intent to distribute looks like. In *Mackey* testimony that 2.3 grams of crack cocaine was not a personal use amount when added to evidence suggesting distribution was enough to show intent to distribute.  The other evidence was that the defendant dropped a bag containing the drugs, he had $845 and a pager; there was another bag with 1.7 grams of crack cocaine nearby; and police found electronic scales, a loaded short-barreled shotgun, and a scanner in the house where they found the defendant. There was more: an informant bought drugs in the house; no one lived there; and the front

17

door was barricaded, a sign that it was a crack house. *United States v. Mackey*, 265 F.3d at 459–60.

In another case that the defendant was not entitled to an instruction on the lesser included offense of possession because proof of his intent to distribute was so strong: he was stopped in a vehicle and had 7 bags of crack cocaine that weighed 1.9 grams, digital scales, additional plastic bags, and a loaded firearm. *Talley v. United States*, 573 Fed. App'x 410, 411 (6th Cir. 2014).

In other cases courts have relied on testimony from officers or other experts that the amount of drugs or other facts showed that the drugs were possessed with intent to distribute. *United States v. Castellanos*, 731 F.2d 979, 982 (D.C. Cir. 1984) (finding sufficient evidence of intent from an expert's testimony that the defendant's possession of six ounces of cocaine of 30% purity showed that it was intended for distribution), *United States v. Davis*, 383 Fed. App'x 269, 277 (4th Cir. 2010) (denying a request for a jury instruction on the lesser-included offense of simple possession when detectives testified that 4.1 grams of crack cocaine, digital scales, plastic bags with corners torn off, $320 in $20 bills, and two guns were connected to drug distribution).

On the other hand, when an officer said the drugs could have been possessed for personal use or for distribution, the defendant was entitled to an

18

instruction on the lesser included offense of simple possession of cocaine.  The defendant had 10.66 grams of crack cocaine on his person and nine grams of marijuana hidden throughout his car and there was a scale and other drug paraphernalia in an apartment he shared with others, The Court reasoned that 10.66 grams of crack cocaine was consistent with personal use and that there was no proof that the scales and drug paraphernalia belonged to the defendant instead of the other people who lived there. *United States v. Monger*, 185 F.3d 574, 575–77 (6th Cir. 1999).

Without other evidence consistent with distribution, possession of even larger amounts of drugs does not prove intent to distribute. *See Turner v. United States*, 396 U.S. 398, 424–25 (1970) (holding that possessing 14.68 grams of cocaine mixed with sugar and not packaged for sale was insufficient to sustain a conviction for possession with intent to distribute). *United States v. Latham*, 874 F.2d 852, 863 (1st Cir. 1989) (holding that possessing one ounce of cocaine did not warrant an inference of possession with intent to distribute). *United States v. Skipper*, 74 F.3d 608, 611 (5th Cir. 1996) (holding that possessing 2.89 grams of crack cocaine, alone, was insufficient, even though"[t]he government introduced some testimony indicating that this amount of drugs could suggest drug dealing.") *See United States v. Nichols,* 184 F. App'x 532, 535 (6th Cir. 2006) (describing

19

evidence in addition to possession that showed intent to distribute— among other things, the defendant was carrying individual rocks of crack in a neighborhood known for drug trafficking,), *United States v. Harris*, 182 F.3d 580 (6th Cir. 1999) (same),

In summary, proof that a defendant possessed an amount consistent with personal use, alone, is not sufficient to prove intent to distribute.  Here, without proof of intent to distribute there was not sufficient proof that Titington possessed a firearm in furtherance of a drug trafficking crime. The Court  should vacate his convictions on these counts and enter judgments of acquittal.

II.     There Was Not Sufficient Evidence to Support
        Titington's Conviction for Conspiracy to Distribute
        Five Kilograms or More of Cocaine and 280 Grams of
        or More of Crack Cocaine (Count Two).

A. Standard of Review.

The same standard of review applies here as for Argument I.

B.  Discussion.

Count Two charged Titington with conspiracy to distribute five kilograms or more of cocaine and 280 grams or more of crack cocaine.  (Third Superceding Indictment, R. 831, Page ID # 5978–79).  See 21 U.S.C. § 846 and 841(b)(1)(A)(ii) and (iii).

The elements of a drug distribution conspiracy are that (1) two or more people agreed to violate drug laws; (2) that the defendant knew of the agreement; and (3) that he joined the conspiracy. *United States v. Potter*, 927 F.3d 446, 453 (6th Cir. 2019).[7] In addition, drug type and quantity are elements because 21 U.S.C. § 841 increases both the maximum penalty and the mandatory minimum penalty based on drug type and quantity. "[F]acts that increase the prescribed range of penalties to which a criminal defendant is exposed" are elements of the crime. *Alleyne v. United States*, 570 U.S. 89, 111 (2013) quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

The government need not prove a formal agreement so long as it shows a tacit or mutual understanding among the parties. *United States v. Caver,* 470 F.3d 220, 233 (6th Cir. 2006). And in drug conspiracies there is no overt act requirement. *United States v. Shabani*, 513 U.S. 10 (1994).

On the other hand, "neither association with conspirators nor knowledge that something illegal was going on by themselves constitute proofs of participation in a conspiracy." *United States v. Webb*, 359 F.2d 558, 562 (6th Cir.

---

[7] In Argument III, following, defendant argues that the jury must also find that the defendant knew of and agreed to the quantities charged, not just that he generally intended to join a conspiracy to distribute drugs. This mens rea element is not required by current precedent in this circuit. See Argument III, following.

21

1966). Stated another way, "[m]ere knowledge or approval, without participation, does not make one a party to a conspiracy." *United States v. Bostic*, 480 F.2d 965, 967 (6th Cir. 1973). See 6th Cir. Pattern Jury Instr. - Crim. 3.03(3) and 14.05(3)(B)(4) (2019).

Here, while there was some evidence that Titington sold small quantities of cocaine in the Lincoln Homes neighborhood, there was no evidence that he knew of or agreed to sell five kilograms or more of cocaine or 280 grams or more of crack cocaine.

Unlike the circumstances in cases where this Court has held the evidence was sufficient, Titington was not present at transactions involving large quantities of drugs, did not facilitate transactions involving large quantities of drugs, and was not hired to protect large quantities of drugs. See *United States v. Powell*, 847 F.3d 760, 780–781 (6th Cir. 2017) (noting that the defendant traveled in tandem with another vehicle carrying 10 kilograms of heroin, transported $2.2 million dollars in cash in locked suitcases loaded by one of the co-conspirators and helped a co-conspirator load a heavy suitcase into a car on one day and was present on another day when suitcases containing 12 kilograms of cocaine were transferred to another person's car.

The best the government could do here was to submit testimony from Troy

22

Galbreath that he saw Titington with an eight-ball — three grams — of cocaine once, (but never saw him sell drugs) (Trial Tr., Vol. 6, R. 1646, Page ID # 16005–06), from Dezorick Ford that Titington sold drugs in Lincoln Homes in 2010–2011, but that it was nothing major, just small pieces of crack cocaine to addicts, (Trial Tr., Vol. 14, R. 1654, Page ID # 18179–80, and from Danyon Dowlen that he bought powder cocaine from Titington 20 or so times in quantities varying from one-half of a gram to an ounce. (Trial Tr., Vol. 11, R. 1651, Page ID # 17247–48). Dowlen also said that he saw Titington sell cocaine and pills to other members of the Gangster Disciples but did not say how much. (*Id.*, Page ID # 17249–50).

So, even if the jury found that Titington was a member of the Gangster Disciples and that he joined a conspiracy by gang members to sell drugs in and around Clarksville, there was no showing that Titington joined an agreement involving the quantities alleged in Count Two. Just putting the defendant in a climate of activity that reeks of something foul does not prove knowledge of the essential object of the conspiracy. *United States v. Morrison*, 220 F. App'x 389, 394 (6th Cir. 2007).

The Court should find that the evidence was insufficient on Count Two and should enter a judgment of acquittal.

23

III.    The District Court Plainly Erred When it Told the Jury That it Did Not Have to Find that Titington Knew What Quantity of Drugs the Crime Involved.

A. Standard of Review.

This Court reviews the district court's jury instructions using the abuse-of-discretion standard of review. *United States v. Prince*, 214 F.3d 740, 761 (6th Cir. 2000).

When a defendant fails to object to a jury instruction the Court reviews the instruction for plain error. Fed. R. Crim. P. 52(b)*, United States v. Olano*, 507 U.S. 725, 732 (1993).

B. Discussion.

The district court instructed the jury that Count Two of the indictment charged the defendants with conspiracy to distribute and possess with the intent to distribute five or more kilograms of cocaine hydrochloride, and 280 grams or more of crack cocaine, oxycodone, methadone, hydrocodone or marijuana. (Trial Tr., Vol. 26, R. 1666, Page ID # 20890). Then the Court told the jury:

> If you find a defendant guilty of either or both Count One and Count Two, you will then determine for that defendant the type and quantity of the controlled substances involved in the RICO conspiracy and in the drug conspiracy that was attributable to that defendant as a result of his own conduct and the conduct of other co-conspirators that was reasonably foreseeable to him. You will be provided with a special verdict form for this purpose.

24

> In determining the quantity of the controlled substance, you need not find that the defendant knew that his offense involved this quantity of drugs.

(Trial Tr., Vol. 26, R. 1666, Page ID # 20891).

Titington did not object to the instructions.  (Trial Tr., Vol. 26, R. 1666, Page ID # 20940).  But it is inconsistent with an individualized determination of drug quantity for the court to tell the jury that it need not find that the defendant knew the quantity of drugs his offense involved.

Although there was testimony that other members of the Gangster Disciples dealt in kilogram quantities of cocaine, there was no testimony that Titington knew of those quantities or could reasonably foresee them.

Troy Gilbreath told of trips he made to Atlanta with Rex Whitlock to buy eight kilograms of cocaine at a time.  (Trial Tr., Vol. 6, R. 1646, Page ID # 15862–63).  Gilbreath also saw Marcus Darden sell five to six kilograms of cocaine that Darden got from Whitlock.  (*Id.*, Page ID # 15979).  But Gilbreath only saw Titington possess an eight-ball of cocaine once.  (*Id.*, Page ID # 16005).  No one put Titington next to large quantities of drugs.

A jury must find any facts "that increase the prescribed range of penalties to which a criminal defendant is exposed . . . ."  *Apprendi v. New Jersey*, 530 U.S. at 490.  This includes facts that increase a mandatory minimum sentence.  *Alleyne*

25

*v. United States*, 570 U.S. at 108 .

Here, Count Two required the jury to find drug types and quantity that increased both the mandatory minimum and the maximum sentence.

After *Alleyne* the way to look at drug conspiracy offenses involving an aggravating element that enhances a defendant's mandatory minimum sentence is to consider them as lesser included and separate offenses. *See United States v. Pizarro*, 772 F.3d 284, 312 n. 17 (1st Cir. 2014). So, for example, conspiring to violate 21 U.S.C. § 841(a)(1) is a lesser included offense of conspiring to violate the same statute when death results from drug distribution because the finding that death resulted requires an increased mandatory minimum penalty. *Burrage v. United States*, 134 S.Ct. 881, 887, n. 3 (2014).

This Court has held that *Alleyne* does not require proof of mens rea as to the type and quantity of drugs to convict under 21 U.S.C. § 841(b). *United States v. Dado*, 759 F.3d 550, 571 (6th Cir. 2014). Dado was convicted of conspiracy to manufacture, distribute, or possess with intent to distribute 1,000 or more marijuana plants.  The Court reasoned that the government need only prove an intent to distribute marijuana, not an intent to distribute more than 1,000 plants, because the penalty provision of the statute requires only that the specified drug types and quantities be "involved" in an offense, even though another provision

26

of the statute requires that the defendant act knowingly. *United States v. Dado*, 759 F.3d at 570. See 18 U.S.C. §§ 841(b) and (a). The Court held that even after *Alleyne*, §841(b) still allows for strict liability as to the type and quantity of drugs. (*Id.*).

Judge Merritt dissented. He said:

The keystone of the [majority's] argument is that Sections 841(a) and (b) are totally unrelated when it comes to the defendant's guilt.

*Alleyne* removes this keystone. The Supreme Court held that "the core crime and the fact triggering the mandatory minimum sentence"—here, the drug quantity—together constitute a new, aggravated crime, each element of which must be submitted to the jury." *Alleyne v. United States*, 133 S.Ct. 2151, 2161, 186 L. Ed. 2d 314 (2013). The key word is "together"–-sections 841(a) and (b) "together" create a "separate, aggravated" possession crime distinguishable from a violation of section 841(a) alone. *Id.*, at 2162. The facts of drug possession and drug quantity are no longer irrelevant but totally dependent conditions, both necessary to prove the crime alleged here.

Why then, is intent relevant to one but not the other? The Supreme Court has recognized that "courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word "knowingly" as applying that word to each element." *Flores-Figueroa v. United States*, 556 U.S. 646, 652, 129 S.Ct. 1886, 173 L. Ed. 2d 853 (2009). This observation reflects the "ordinary English usage" of the word "knowingly." *Id*.

This interpretation respects the core lesson of the *Apprendi* and *Alleyne* cases, which is that "every fact which is in law essential to the punishment sought to be inflicted" is an inseparable "element" of the crime. *Alleyne*, 133 S.Ct. at 2159 (internal edit omitted). When

27

interpreting the requirements of a crime, "the relevant inquiry is one not of form, but of effect," *Apprendi v. New Jersey*, 530 U.S. 466, 494, 120 S.Ct. 2348, 147 L. Ed. 2d 435 (2000), and the effect of isolating the intent required to commit Dado's crime—the intent to manufacture some amount of some substance rather than the intent to manufacture over 1000 marijuana plants—is to totally separate Dado's act from the facts relevant to his punishment.

.   .   .

The majority's rule runs against the strong presumption against strict liability crimes. *Staples v. United States*, 511 U.S. 600, 607 n. 3, 114 S.Ct. 1793, 128 L. Ed. 2d 608 (1994); supra at 24.  The majority's opinion disregards the presumption that the more serious the penalty at issue, the more important intent is to guilt. *Staples*, 511 U.S. at 616; supra at 24.[8]

Supreme Court decisions after *Alleyne* say that Judge Merritt's reasoning should now prevail.  In *Burrage*, the Court confirmed that 21 U.S.C. § 841 consists of several offenses because of the increased mandatory minimum sentences, including those based on drug type and quantity set out in the statute. *Burrage v. United States*, 134 S.Ct. at 887 n. 3.

In *Rehaif v. United States*, 139 S.Ct. 2191 (2019), the Court said that using

---

[8]*See United States v. Jefferson*, 791 F.3d 1018, 1019 (9th Cir. 2015) (W. Fletcher, J. concurring) (discussing the history of the drug statute and adopting and expanding on Judge Merritt's reasoning).

An en banc panel of the Ninth Circuit has invited briefing to address if the government must prove that the defendant intended to distribute or conspired to distribute a particular drug type and quantity. *United States v. Collazo*, *et al.,* Case Nos. 15-50509, 16-50048, 16-50117, 16-50195 and 16-50345, 2020 U.S. App. LEXIS 2870 (9th Cir. July 29, 2020).

the word "knowingly"in  a statute prohibiting certain people from possessing

firearms means that the government must prove that the defendant knew of his

status as a prohibited person, not just that he knew he possessed a firearm:

> A federal statute, 18 U.S.C. § 922(g), provides that "[i]t shall be
> unlawful" for certain individuals to possess fire-arms. . . . A separate
> provision, § 924(a)(2), adds that anyone who "*knowingl*y violates"
> the first provision shall be fined or imprisoned for up to 10 years.
> (Emphasis added).
>
> The question here concerns the scope of the word "knowingly". . . .
> We hold that the word "knowingly" applies both to the defendant's
> conduct and to the defendant's status.  To convict a defendant, the
> Government therefore must show that the defendant knew he
> possessed a firearm and also that he knew he had the relevant status
> when he possessed it.

*Rehaif v. United States*, 139 S.Ct. at 2194).

Echoing Judge Merritt, the Court required that the defendant intend to

violate each element of the crime:

> [T]he text of § 922(g) simply lists the elements that make a
> defendant's behavior criminal.  As "a matter of ordinary English
> grammar," we normally read the statutory term "knowingly" as
> applying to all the subsequently listed elements of the crime."
> *Flores-Figueroa v. United States*, 556 U.S. 646, 650, 129 S.Ct. 1886,
> 173 L. Ed. 2d 853 (2009); see also *id.*, at 652, 129 S.Ct. 1886, 173 L.
> Ed. 2d 853 (we "ordinarily read a phrase in a criminal statute that
> introduces the elements of a crime with the word "knowingly" as
> applying that word to each element").

.   .   .

29

> Beyond the text, our reading of § 922(g) and § 924(a)(2) is consistent with a basic principle that underlies the criminal law, namely, the importance of showing what Blackstone called "a vicious will." 4 W. Blackstone, Commentaries on the Laws of England 21 (1769). . . . [T]he understanding that an injury is criminal only if inflicted knowingly "is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." *Morissette v. United States,* 342 U.S. at 250, 72 S.Ct. 240, 96 L. Ed. 288.

*Rehaif v. United States*, 139 S.Ct. at 2195.

In addition the Court said that Congress normally intends that a criminal defendant possess a culpable mental state as to each of the statutory elements of the crime. *Id*.

There is no reason to override that normal intent here.

The Court should reverse Titington's conviction on Count Two. The jury was not properly instructed and its verdict produced an unfair result.

The Court may decline to follow the panel decision in *Dado* because the Supreme Court's rulings in *Burrage* and *Rehaif* in effect overrule *Dado*. *Manners v. United States*. 947 F.3d 377, 382 (6th Cir. 2020), *Salmi v. Sec'y of Health and Human Services*, 774 F.2d 685, 689 (6th Cir. 1985). Neither the majority nor the dissent in *Dado* discussed *Burrage,* even though *Burrage* was decided a few months earlier.

30

IV.    The District Court Should Have Adjusted Titington's
Sentence to Account for 52 Months Titington Served on
State Sentences That Were Relevant Conduct to the
Instant Offense.

A. Standard of Review.

The Court reviews decisions of the district court to depart at sentencing for

abuse of discretion.  *United States. v. Dunham*, 295 F.3d 605, 610 (6th Cir. 2002).

But the Court will not review a district court's decision declining to depart

downward under the sentencing guidelines unless the record clearly shows that

the district court was unaware of or did not understand its discretion to depart.

*United States v. Santillana*, 540 F3d 428, 431 (6th Cir. 2008), *United States v.*

*Noel*, 372 Fed. App'x 586, 590 (6th Cir. 2010).

It is an abuse of discretion to make an error of law or a clear error of factual

determination.  *United States v. Mandoka*, 869 F.3d 448, 457 (6th Cir. 2017).

The Court will review arguments made on appeal for the first time for plain

error. Plain error is "an '(1) error (2) that was obvious or clear, (3) that affected

[the defendant's] substantial rights and (4) that affected the fairness, integrity or

public reputation of the judicial proceedings.'" *United States v. Crawford*, 943

F.3d 297, 308 (6th Cir. 2019) (quoting *United States v. Vonner*, 516 F.3d 382,

386 (6th Cir. 2008) (en banc)).

31

B. Discussion.

1. The district court failed to recognize that it had discretion to adjust Titington's sentence.

Titington asked the district court to adjust his sentence for 52 months, 22 days he spent in custody on state cases that were relevant conduct to the instant offense. He had completed serving these sentences by the time of his federal sentencing. (Defendant's Sentencing Mem., R. 1547, Page ID # 13685).

USSG § 5G1.3(b) says that court shall adjust the federal sentence to run concurrently to any undischarged sentence that was relevant conduct to the offenses. Because Titington's sentences were discharged, § 5G1.3 did not apply, but the district court had authority to impose a sentence below the guideline to account for the discharged sentences. USSG § 5K2.23.[9] (See Presentence Investigation Report ("PSR"), R. 1606, Page ID # 14488).

Titington was convicted of state charges of aggravated assault with a

_____

[9]A downward departure may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 (Imposition of a Sentence on a Defendant Subject to Undischarged Term of Imprisonment or Anticipated Term of Imprisonment) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense.

USSG § 5K2.23

deadly weapon and felon in possession of a firearm for which he was arrested on

February 15, 2015, and ultimately sentenced to serve six years and four years on

the two convictions. Both sentences expired before his federal sentencing. (PSR,

R. 1606, Page ID # 14477).

The presentence report said the state cases were relevant conduct to the

instant offense. (PSR, R. 1606, Page ID # 14477).

The government did not dispute that the convictions were for relevant

conduct, but argued that the court should not adjust Titington's sentence:

> Part of the reason that he was charged federally, frankly, is because
> we didn't think that was a sufficient sentence for that conduct. So
> we don't think that it's appropriate simply just to account for his
> conduct in that shooting by not giving him any additional time here. .
> . at the end of the day we are asking for a sentence of 480 months. . .

(Sentencing Tr., R. 1675, Page ID # 21260).

The district court declined to depart and said:

> I am not going to depart, as suggested by your counsel, for the 52
> months because I think that's inappropriate and not justified by the
> guidelines.

(*Id*., Page ID # 21278–79).

The district court's ruling is unclear. Section 5K2.23 of the guidelines

permits a departure in cases where a discharged sentence would have resulted in a

guidelines adjustment if not discharged. Section 5G1.3(b) requires the court to

adjust a sentence if the defendant is serving an undischarged sentence "resulting from another offense that is relevant conduct to the offense of conviction."[10]

So, adjusting a defendant's sentence for time served for an offense that is relevant conduct to the instant offense is "justified" by the guidelines. If the sentence is undischarged the court must adjust the sentence. If it is discharged the court may adjust the sentence.

The district court's comments do not make it clear that the district court

---

[10]Section 5G1.3 says:

(a) If the instant offense was committed while the defendant was serving a term of imprisonment . . . the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

(b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction the sentence for the instant offense shall be imposed as follows:

> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

USSG § 5G1.3(a) and (b).

34

was aware that it had authority to depart.

Titington squarely presented the issue to the district court to decide and referred the court to the applicable guideline, as did the presentence investigation report. (Defendant's Sentencing Memorandum, R. 1547, Page ID # 13685, PSR, R. 1606, Page ID # 14488). In contrast, in *Noel* the defendant never presented the issue to the district court, so this Court refused to review the district court's sentence. *United States v. Noel*, 372 Fed. App'x at 589.

The Court should remand the case for re-sentencing so the district court can exercise its discretion under the guidelines to consider how to account for Titington's discharged state sentences.

2. It violates equal protection and due process of law to require courts to adjust sentences for undischarged sentences based on relevant conduct but not for discharged sentences based on relevant conduct.

Because Titington did not make any constitutional arguments in the district court this Court will review his argument using the plain error standard or review.

In *Dunham* this Court rejected an equal protection challenge to how USSG § 5G1.3(b) distinguishes between discharged and undischarged state sentences. The Court said there was a rational basis for the different treatment. Other courts disagree. They say that treating undischarged and discharged sentences differently is irrational and that it violates due process. *United States v.*

35

*Gonzalez-Murillo*, 852 F.3d 1329, 1342 (11th Cir. 2017) (Rosenbaum, J., concurring), *United States v. Hill*, 187 F. Supp 3d. 959, 968 (N.D. Ill. 2016)

In *Hill*, the district court held that treating a defendant differently at sentencing based on the timing of the federal prosecution lacks a rational basis and thus violates the constitution's due process clause which protects against arbitrary sentencing distinctions. *United States v. Hill*, 187 F. Supp 3d. at 961, 965. *See Chapman v. United States*, 500 U.S. 453 (1991) (noting that an argument based on equal protection essentially duplicates an argument based on due process). The district court in *Hill* criticized *Dunham* "because it focuses exclusively on the federal sentence as opposed to the aggregate state and federal sentences. *United States v. Hill*, 187 F. Supp 3d at 967.[11]

*Dunham* interpreted an older version of USSG § 5G1.3(b), that required that the undischarged offenses affect the defendant's offense level score under the guidelines in order for the district court to run the sentences concurrently.[12] *See*

---

[11]The court held that the distinction in 18 U.S.C. § 3584 between discharged and undischarged sentences as applied to a defendant subject to a  mandatory minimum sentence is arbitrary and violates the Fifth Amendment's due process guarantee. (*Id.*)

[12]This Court declined to revisit *Dunham* after the guideline was amended. *United States v. White*, 617 F. App'x 545, 552 (6th Cir. 2015).

*United States v. Gonzalez-Murillo*, 852 F.3d at 1341, n. 2.

For the reasons set forth in *Hill*, *Dunham* is a flawed decision and this Court should revisit it.  Titington acknowledges that this panel may not overrule the decision of a prior panel.  *Salmi v. Sec'y of Health and Human Services*, 774 F.2d at 689.  Titington raises the argument in order to preserve it for further review.

CONCLUSION

The Court should remand the case so the district court can adjust Titington's sentence for the 52 months he spent in state custody on related charges. There is no reason to treat discharged and undischarged sentences differently.

The Court should vacate Titington's convictions on Counts Two, Forty, and Forty-Two and enter judgments of acquittal. If it declines to enter a judgment of acquittal on Count Two it should  order a new trial  on Count Two.

Dated: May 11, 2020                          Respectfully submitted,

                                             /s/Kenneth P. Tableman
                                             Kenneth P. Tableman
                                             Attorney for Defendant-Appellant

37

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT TYPE FACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 9804 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word Perfect ® Office-Version X6, Version16.0.0.429 in 14 point Times New Roman font.

Dated: May 11, 2020                                    /s/Kenneth P. Tableman
                                                        Kenneth P. Tableman

## CERTIFICATE OF SERVICE

I certify that on May 11, 2020, I served a copy of this document on:

John Benjamin Schrader                  Ivana Nizich
Assistant United States Attorney        Assistant United States Attorney
*Attorney for Plaintiff-Appellee*       *Attorney for Plaintiff-Appellee*
ben_schrader@usdoj.gov                  ivana.nizich@usdoj.gov

Debra T. Phillips                       Shauna S. Hale
Assistant United States Attorney        Assistant United States Attorney
*Attorney for Plaintiff-Appellee*       *Attorney for Plaintiff-Appellee*
deb.phillips@usdoj.gov                  shauna.hale2@usdoj.gov

by filing with this Court's CM/ECF system.

                                                        /s/Kenneth P. Tableman
                                                        Kenneth P. Tableman

38

ADDENDUM DESIGNATING
RELEVANT DISTRICT COURT DOCUMENTS

DeCarlos Titington, Defendant-Appellant, as provided by Sixth Circuit Rule 30(b), designates the following relevant documents from the electronic record in the district court:

| Docket Entry No. | Document | Page ID# |
|---|---|---|
| 831 | Third Superceding Indictment | 5958–6008 |
| 859 | Mem. Opinion and Order | 6185–94 |
| 878 | Information | 6328–30 |
| 1368 | Jury Verdict | 10441–46 |
| 1388 | Defendant's Motion for Judgment of Acquittal | 10587 |
| 1460 | Mem. Opinion | 11766–11825 |
| 1461 | Order | 11826 |
| 1547 | Defendant's Sentencing Memorandum | 13685 |
| 1594 | Judgment | 14331–39 |
| 1604 | Notice of Appeal | 14390 |
| 1606 | Presentence Investigation Report | 14477–14488 |
| 1641 | Trial Tr., Vol. 1A, March 1, 2019 | 14780–96 |
| 1642 | Trial Tr., Vol. 2A, March 4, 2019 | 14797–14892 |
| 1643 | Trial Tr., Vol. 3, March 5, 2019 | 14893–15181 |
| 1644 | Trial Tr., Vol. 4, March 6, 2019 | 15182-15482 |
| 1645 | Trial Tr., Vol. 5, March 7, 2019 | 15483–15779 |
| 1646 | Trial Tr., Vol. 6, March 11, 2019 | 15780–16070 |
| 1647 | Trial Tr., Vol. 7, March 12, 2019 | 16071–16338 |

| 1648 | Trial Tr., Vol. 8, March 13, 2019 | 16339–16605 |
|---|---|---|
| 1649 | Trial Tr., Vol. 9, March 14, 2019 | 16606–16884 |
| 1650 | Trial Tr., Vol. 10, March 18, 2019 | 16885–17159 |
| 1651 | Trial Tr., Vol. 11, March 19, 2019 | 17160–17402 |
| 1652 | Trial Tr., Vol. 12, March 20, 2019 | 17403–17688 |
| 1653 | Trial Tr., Vol. 13, March 21, 2019 | 17689–17960 |
| 1654 | Trial Tr., Vol. 14, March 25, 2019 | 17961–18252 |
| 1655 | Trial Tr., Vol. 15, March 26, 2019 | 18253–18534 |
| 1656 | Trial Tr., Vol. 16, March 27, 2019 | 18535–18691 |
| 1657 | Trial Tr., Vol. 17, April 1, 2019 | 18692–18955 |
| 1658 | Trial Tr., Vol. 18, April 2, 2019 | 18956–19278 |
| 1659 | Trial Tr., Vol. 19, April 3, 2019 | 19279–19517 |
| 1660 | Trial Tr., Vol. 20, April 4, 2019 | 19518–19782 |
| 1661 | Trial Tr., Vol. 21, April 8, 2019 | 19783–20034 |
| 1662 | Trial Tr., Vol. 22, April 9, 2019 | 20035–20265 |
| 1663 | Trial Tr., Vol. 23, April 10, 2019 | 20266–20323 |
| 1664 | Trial Tr., Vol. 24, April 11, 2019 | 20324–20560 |
| 1665 | Trial Tr., Vol. 25, April 15, 2019 | 20561–20839 |
| 1666 | Trial Tr., Vol. 26, April 16, 2019 | 20840–20944 |
| 1667 | Trial Tr., Vol. 27, April 17, 2019 | 20945–68 |
| 1668 | Trial Tr., Vol. 28, April 18, 2019 | 20969–77 |
| 1669 | Trial Tr., Vol. 29, April 22, 2019 | 20978–85 |
| 1670 | Trial Tr., Vol. 30, April 23, 2019 | 20986–99 |
| 1671 | Trial Tr., Vol. 31, April 24, 2019 | 21000–08 |

| 1672 | Trial Tr., Vol. 32, April 29, 2019 | 21009–39 |
| 1675 | Sentencing Transcript | 21246–79 |